UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JORDAN JOSEPH KINARD,

        Plaintiff,

    v.                                    ACTION NO. 2:20cv126

MS. WILLIAMS,

        Defendant.

## **FINAL ORDER**

This matter is before the Court to address Plaintiff's objections to a Report and Recommendation ("R&R") filed by United States Magistrate Judge Robert J. Krask. *See* Obj. R&R, ECF No. 54; R&R, ECF No. 53.

### I.    **Relevant Procedural History**

Plaintiff, a Virginia inmate, filed this *pro se* action pursuant to 42 U.S.C. § 1983 to redress alleged violations of his constitutional rights. Am. Compl., ECF No. 7. On June 14, 2022, counsel for Defendant filed: (i) a joint Motion to Dismiss with Prejudice, ECF No. 27; (ii) a proposed Order of Dismissal with Prejudice, ECF No. 27-1; and (iii) a redacted copy of the parties' Settlement Agreement, ECF No. 28. In accordance with the parties' joint Motion to Dismiss, the Court entered a Dismissal Order on June 23, 2022, and this action was dismissed with prejudice. *See* Dismissal Order at 1, ECF No. 29.

On July 7, 2022, Plaintiff filed an "Objection to Motion to Dismiss," which the Court construes as a motion to vacate judgment pursuant to Federal Rule of Civil

Procedure 59(e) ("Rule 59(e) Motion").[1] R. 59(e) Mot., ECF No. 31. Defendant timely filed a Response, ECF No. 32. Plaintiff then filed a Motion to Void Settlement, ECF No. 34, and a Reply to Defendant's Response, ECF No. 38.

Upon review of Plaintiff's Motions and Defendant's Response, the Court, in an Order entered on February 8, 2023, noted that it "ha[d] serious concerns regarding the manner in which this matter was presented to the Court for settlement." *See* Order at 2–4, ECF No. 40 (detailing the Court's concerns). Accordingly, the Court ordered counsel for Defendant to file additional briefing regarding the parties' settlement. *Id.* at 4–5.

Thereafter, counsel filed a Response to the Court's February 8, 2023 Order, which provided additional background and explanation regarding the parties' settlement discussions and the terms upon which they agreed to settle. Suppl. Resp. at 2–8, ECF No. 43. Plaintiff then filed a Reply to Defendant's Supplemental Response, ECF No. 46. By Order entered on January 26, 2024, the Court referred this matter to Magistrate Judge Krask pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), to issue a Report and Recommendation for the disposition of Plaintiff's pending motions. Order at 1–2, ECF No. 48.

Magistrate Judge Krask held an evidentiary hearing on March 27, 2024, and issued a Report and Recommendation on May 8, 2024. R&R, ECF No. 53. Plaintiff

---

[1] Magistrate Judge Krask recommends in the R&R that Plaintiff's July 7, 2022 filing be construed as a Rule 59(e) motion. *See* R&R at 10–12, ECF No. 53. Plaintiff did not object. *See* Obj. R&R, ECF No. 54. Accordingly, the Court will **ADOPT** that recommendation.

timely filed objections. Obj. R&R, ECF No. 54. Defendant did not file objections or a response to Plaintiff's objections.[2]

### II.   The R&R

Magistrate Judge Krask sets forth a detailed factual background of this case in the R&R. *See* R&R at 2–10. Magistrate Judge Krask also makes several recommendations to the Court regarding the disposition of this matter, and in support of those recommendations, he makes several factual findings and credibility determinations. *See generally id.* at 3–30. The Court will briefly summarize those recommendations.

Magistrate Judge Krask first recommends that Plaintiff's Rule 59(e) motion be granted, and the Court's June 23, 2022 Dismissal Order and Judgment be vacated. *See* R&R at 10–16. Plaintiff did not object to these recommendations. *See* Obj. R&R at 1–9. Then, "[h]aving set aside the judgment and the order of dismissal," Magistrate Judge Krask recommends that "the Court . . . again address [D]efendant's motion to dismiss the case with prejudice, ECF No. 27, which now has been fully briefed and heard." R&R at 16. In order to rule upon the dismissal motion, Magistrate Judge Krask notes that the Court must first determine "whether the parties, in fact, agreed to settle this matter and, if so, upon what terms." *Id.*

Applying Virginia contract law, Magistrate Judge Krask found that the parties had in fact agreed to settle this matter and that "the only settlement agreement

---

[2] Counsel for Defendant subsequently filed a Motion to Substitute Attorney, ECF No. 55. Upon review, the Motion to Substitute Attorney, ECF No. 55, is **GRANTED**. The Clerk is **DIRECTED** to update the docket accordingly.

among the parties is the . . . agreement executed by [Plaintiff] on May 4, 2022, and by defense counsel on May 5, 2022" (the "Settlement Agreement"). *Id.* at 17. In making this finding, Magistrate Judge Krask found that the events and discussions *preceding* the signing of the Settlement Agreement could not be used to alter the terms of the agreement or to create any other enforceable contractual obligations between the parties. *Id.* at 18–22. Likewise, Magistrate Judge Krask found that the events and discussions *following* the signing of the Settlement Agreement did not create a separate contract or obligation between the parties. *Id.* at 22–24. Plaintiff objected to these findings. *See* Obj. R&R at 6–7.

Having found that the signed Settlement Agreement was the only agreement between the parties, Magistrate Judge Krask proceeded to address Plaintiff's arguments against dismissing this matter pursuant to the parties' agreement, as well as Plaintiff's request to declare the agreement void. R&R at 24–29. Magistrate Judge Krask also addressed Plaintiff's alternative request to find that prison officials breached the Settlement Agreement. *Id.* at 29–30. Magistrate Judge Krask recommends that the Court dismiss this action pursuant to the terms of the parties' Settlement Agreement and deny Plaintiff's requests to either declare the agreement void or find that prison officials breached the agreement. *See* R&R at 30. Plaintiff objected to these recommendations. *See* Obj. R&R at 7–8.

For the reasons set forth below, Plaintiff's objections will be **OVERRULED**, the Court will **ADOPT** the R&R **as modified below**,[3] and this action will be **DISMISSED with prejudice**.

### III.   Standard of Review

When a *pro se* party objects to a magistrate judge's recommendations, "district courts must review *de novo* any articulated grounds to which the litigant appears to take issue." *Elijah v. Dunbar*, 66 F.4th 454, 460–61 (4th Cir. 2023). In addition, whenever a party objects to a magistrate judge's credibility determination, the district court must review the audio recording or a transcript of the relevant testimony. *See Allen v. United States*, No. 1:18cr154, 2022 WL 2045328, at *2 (S.D. W. Va. June 7, 2022) ("To fulfill its obligation to make a *de novo* review, a district court must independently review the transcript or audio of the evidentiary hearing." (citing *Alexander v. Peguese*, 836 F.2d 545 (4th Cir. 1987))). "However, 'when objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with.'" *Reid v. North Carolina*, 837 F. Supp. 2d 554, 557 (W.D.N.C. 2011) (quoting *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982)), *aff'd*, 471 F. App'x 188 (4th Cir. 2012). Likewise, *de novo* review is not required "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." *Id.* (quoting *Orpiano*, 687 F.2d at 47); *see also United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007) ("[T]o preserve for appeal an issue in a

---

[3] As explained below, the Court will retain jurisdiction to enforce the Settlement Agreement, if necessary.

magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.").

## IV.   <u>Discussion</u>

As summarized above, Magistrate Judge Krask makes the following recommendations: (i) that Plaintiff's July 7, 2022 filing (ECF No. 31) be construed as a motion to vacate judgment pursuant to Federal Rule of Civil Procedure 59(e), and that the motion be granted; (ii) that the Court's June 23, 2022 Dismissal Order and ensuing Judgment (ECF Nos. 29, 30) be vacated; (iii) that "Plaintiff's requests to treat the parties' settlement as void, to find that one or more [D]efendants breached the settlement agreement, and to enter into a new settlement agreement" be denied;[4] (iv) that Plaintiff's "objection to the newly reinstated motion to dismiss" be overruled; and (iv) that this matter be dismissed with prejudice, and without a reservation of jurisdiction. R&R at 1–2, 16.

Because it is difficult to discern the exact basis for some of Plaintiff's objections, the Court has attempted to broadly construe the objections in deference to Plaintiff's *pro se* status. *See Elijah*, 66 F.4th at 460–61 (explaining that a *pro se* litigant's objections to a magistrate judge's recommendations must be construed liberally). The Court construes Plaintiff's filing to state the following objections: (i) that Magistrate

---

[4] These requests are set forth in Plaintiff's Motion to Void Settlement, ECF No. 34, and Plaintiff reiterated them during the March 27, 2024 hearing, as well as in his Objections to the R&R. *See* Tr. at 36–37 (Plaintiff stating that he wanted to be "restored" to his pre-settlement conditions and renegotiate a new settlement); Obj. R&R at 7–8 (Plaintiff arguing that the Settlement Agreement should be declared "void.")

Judge Krask erred in determining that the parties' pre-agreement discussions did not create any separate contractual obligations; (ii) that Magistrate Judge Krask erred in determining that the parties' post-agreement discussions did not create any separate contractual obligations; (iii) that Magistrate Judge Krask erred in recommending that Plaintiff's requests to void the settlement agreement be denied; and (iv) that Magistrate Judge Krask erred in rejecting Plaintiff's claims that prison officials breached the Settlement Agreement. Obj. R&R at 1–11.

## A.   The Settlement Agreement

As noted above, after finding that the Court's June 23, 2022 Dismissal Order should be vacated, Magistrate Judge Krask proceeded to determine whether the parties had in fact agreed to settle this matter, and if so, on what terms. *See* R&R at 16–18. Magistrate Judge Krask sets forth the factual background of the parties' settlement discussions in the R&R. *See* R&R at 3–7. As the R&R recounts, defense counsel received an offer from Plaintiff to settle this matter on April 18, 2022. *Id.* at 3. Plaintiff offered to settle in exchange for a transfer from Sussex II State Prison to Sussex I State Prison. *Id.* (citing Pl.'s Joint Mot. Dismiss, ECF No. 43-2). The April 18, 2022 offer "followed approximately 10 prior settlement offers apparently made by [Plaintiff], or persons purporting to act on his behalf, to counsel for the [D]efendant from November 2021 through April 2022." *Id.* at 3 n.2.

Defendant did not accept the April 18, 2022 offer; however, defense counsel spoke with Plaintiff via telephone on April 29, 2022, to discuss settlement. *Id.* at 4. The R&R recounts the subsequent events as follows:

7

Before the scheduled 1:30 p.m. telephone call, counsel for [Defendant] emailed counselor Young at Sussex II prison at 1:12 p.m., asking that she provide [Plaintiff] with an attached draft, unsigned settlement agreement ("first draft") at the start of the call. [First Apr. 29, 2022 Email,] ECF No. 43-3 [at 1].

After the 1:30 p.m. telephone call with [Plaintiff], counsel for [Defendant] again emailed counselor Young at 1:41 p.m., asking that she provide [Plaintiff] with an attached "updated, draft, unsigned settlement agreement ("second draft"). [Second Apr. 29, 2022 Email,] ECF No. 43-4 [at 1]. Counsel also requested that the document be scanned and emailed to her "[o]nce [Plaintiff] has signed it." *Id.* at 1. . . . [T]he second draft modified the first draft, reportedly pursuant to the telephone discussion between [Plaintiff] and defense counsel, that occurred after counsel prepared and sent the first draft. *Compare* [First Draft,] ECF No. 43-3, at 2, ¶ 1 *with* [Second Draft,] ECF No. 43-4, at 2 ¶ 1.

In a March 10, 2023 affidavit, counselor Young states that counsel for defendant Williams contacted her on April 29, 2022 about providing certain documents to Kinard. [Young Aff.,] ECF No. 43-7. Counselor Young states that she "received two documents by email from [defense counsel] and . . . gave them both to [Plaintiff]," but does not indicate when she did so. *Id.* [Plaintiff] acknowledged receiving both documents during the hearing, but expressed uncertainty about when that happened.

On May 4, 2022, [Plaintiff] signed and dated the first draft proposal. [Redacted Settlement Agreement,] ECF No. 28, at 2. Apparently, [Plaintiff] provided the signed document to a prison staff member at Sussex II, who forwarded it by email to defense counsel, who signed and dated it on May 5, 2022, beneath [Plaintiff's] signature. *Id.* [Plaintiff] testified that he received, but never signed the second draft.

On May 5, 2022, [Plaintiff] wrote a letter to defense counsel stating that the written agreement [that Plaintiff had signed the day prior and sent to defense counsel] omitted a provision he had apparently requested during the April 29, 2022 telephone call, seeking to delay his transfer from Sussex II to Sussex I, until after he received a television and his late June birthday. [Pl.'s May 5, 2022, Letter,] ECF No. 32-4 (reciting that counsel said "okay no problem"). A date stamp reflects that the Attorney General's office received this letter on May 12, 2022. *Id.* [Plaintiff's] letter requested that counsel "amend" the agreement to reflect the revised transfer date or advise the Department of Corrections to delay the transfer until after June 27, 2022. *Id.*

8

On May 11, 2022, Kinard wrote a letter to a counselor at Sussex II. [Pl.'s May 11, 2022 Letter,] ECF No. 32-3; [May 11, 2022 Email,] ECF No. 52-1, at 3. In the letter, [Plaintiff] asked the counselor to ask another prison staff member to notify defense counsel:

> [T]o please make a telephone call up here to speak with me to avoid the previous settlement agreement (I was so generous about resolving) being "void in ab initio" as it was signed under coercion and extreme duress as I was compelled to sign it in the face especially of lack of mental health treatment relating to my diagnosed but untreated PTSD, schizophrenia, and impulse disorder . . . .

[Pl.'s May 11, 2022 Letter at 1]; *see* [First April 29, 2022 Email,] ECF No. 43-3 [at 1] (referencing the prison staff member's name in the email forwarding the first draft settlement agreement).

Defense counsel received [Plaintiff's] written communication by email from a paralegal in the Office of the Attorney General, Correctional Litigation Section, on May 11, 2022, at 10:53 a.m. [May 11, 2022 Email] ECF No. 52-1 [at 3]; *see id.* at 3–4 (paralegal's email forwarding communication to counsel).

A date stamp reflects that on May 12, 2022, the Office of the Attorney General received [Plaintiff's] May 5, 2022 letter . . . . [Pl.'s May 5, 2022 Letter,] ECF No. 32-4. Defense counsel responded to [Plaintiff] by letter on May 18, 2022. [Def.'s May 18, 2022 Letter,] ECF No. 32-5, at 1; *see id.* (attributing delayed response to being "out of the office with COVID"). In the letter, defense counsel first apologized and attributed any confusion to the fact that plaintiff must have been given the first draft proposed agreement, instead of the second draft that she prepared during the call and sent by email afterward. *Id.* at 1. Defense counsel acknowledged that, during the April 29, 2022 call, they had discussed delaying [Plaintiff's] transfer from Sussex II to Sussex I until after he received a television about June 20, 2022. *Id.* She also acknowledged [Plaintiff's] May 5th request to further delay the transfer until after his late June 2022 birthday. *Id.* Counsel wrote that she was willing to postpone [Plaintiff's] transfer from Sussex II to Sussex I "within ten . . . working days of June 27, 2022." *Id.* To effectuate this change, defense counsel sent [Plaintiff] an unsigned addendum addressing the new timing for [Plaintiff's] transfer (as well as a copy of the prior signed agreement). *Id.* at 1–5. To avoid "any further accidents or

miscommunications," counsel sent the letter and enclosures directly to [Plaintiff] and requested that he sign and return the proposed addendum. *Id.* at 1. Counsel further advised that, upon receiving the signed addendum from [Plaintiff], she would "provide [him] with executed copies of all documents to effectuate the settlement agreement." *Id.*

[Plaintiff] testified that he received defense counsel's May 18, 2022 letter and enclosures, including the proposed addendum. [*see* Tr. at 23–24, ECF No. 56]. He testified, however, that he declined to sign the proposed addendum because he had not received his television and because defense counsel made other promises not contained in the agreement. [*See id.* at 24;] [*s*]*ee also* [Reply Def.'s Suppl. Resp.,] ECF No. 46, at 1.

By letter dated June 8, 2022, Kinard advised defense counsel that, "[d]ue to unforeseen circumstances, [he was] going to suspend our settlement agreement until further notice." [Pl.'s June 8, 2022 Letter,] ECF No. 43-5, at 1.

*Id.* at 3–7 (internal numbering and footnotes omitted). This factual background is fully supported by the documents in the record and the testimony at the evidentiary hearing, and Plaintiff has made no objection thereto.

Applying Virginia contract law, Magistrate Judge Krask found that the parties had agreed to settle and that the terms of the settlement were set forth in the Settlement Agreement that was signed by Plaintiff on May 4, 2022, and by defense counsel on May 5, 2022. The Settlement Agreement states:

This Agreement is entered into by the parties, Plaintiff (*pro se*) Jordan Jason [sic] Kinard, #1182772, and all named Defendants, in their individual and official capacities, by counsel, and is for the purpose of settling all claims in *Kinard v. Williams* (2:20cv126); *Kinard v. Vandermark, et al,* (2:22cv143); *Kinard v. Mitchen* (2:22cv55); and *Kinard v. Critton* (2:20cv125) as well as all allegations related to events on May 7, 2021. This agreement was entered into during a settlement call on April 29, 2022, and resolves all claims and attendant relief.

The parties agree as follows:

1. Without admitting liability, the Virginia Department of Corrections ("VDOC") agrees to transfer Plaintiff from Sussex II State Prison to Sussex I State Prison ("Sussex I") and to provide Plaintiff with a job within 15 working days of the date of execution of this Agreement by both parties. Once at Sussex I, Plaintiff will comply with the rules and regulations of VDOC and Sussex I in order to keep his job and remain at Sussex I.

2. A "working day" is defined as weekdays, Monday through Friday, except official state holidays.

3. Plaintiff will remain responsible for paying any remaining unpaid balance of his filing fees to the courts.

4. Upon execution of this Agreement, counsel for Defendant, acting on behalf of the Defendant and the *pro se* Plaintiff, shall [file] a Joint Motion to Dismiss with Prejudice in the United States District Court for the Eastern District of Virginia, on behalf of all parties, for voluntary dismissal of *Kinard v. Williams* (2:20cv126). The undersigned counsel shall draft the appropriate documents as necessary in the other cases addressed by this Agreement.

5. Plaintiff and Defendants voluntarily enter into this Agreement. No promises have been made by, or to, either Plaintiff or Defendant, except as explicitly stated herein. This Agreement settles all claims set forth in the above referenced lawsuits as well as May 7, 2021, and all claims arising out of the same facts. Plaintiff and Defendant do hereby release and forever discharge each other from all claims and demands whatsoever relating to this lawsuit, except for any and all claims and demands relating to enforcement of this Agreement.

6. Plaintiff acknowledges that counsel for Defendants does not represent Plaintiff and has not, and cannot, provide Plaintiff with any legal advice. Plaintiff represents and is acting in accordance with his own interests.

       7.   This is the entire agreement between Plaintiff and the
Defendant.

Settlement Agreement at 1–2, ECF No. 50 at 14–15. Magistrate Judge Krask found

that this agreement "constitutes the only settlement reached among the parties" and

that neither the parties' pre-settlement nor post-settlement discussions created any

enforceable obligations between the parties. R&R at 18.

## B.    <u>Pre-settlement Discussions</u>

Plaintiff objects to Magistrate Judge Krask's determination that the parties'

pre-agreement discussions did not create any other contractual obligations between

the parties. Obj. R&R at 6–7 (Plaintiff asserting that "[t]he events preceding the

signed [agreement] CAN be used to vary the terms of the settlement"); *see* R&R

at 18–22 (explaining that the parol evidence rule prohibits modification of the parties'

signed settlement agreement).

As courts have explained, "[i]n Virginia, no general rule seems to be better

settled than that, in controversies between two parties to a contract, parol evidence

of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary,

contradict, add to, or explain the terms of complete, unambiguous, unconditional,

written instruments." *In re Brookland Park Plaza, LLC*, No. 09-34495, 2009

WL 3297801, at *6 (Bankr. E.D. Va. Oct. 13, 2009) (quoting *Walker v. Laberge Co., v.

First Nat. Bank of Boston*, 146 S.E.2d 239, 243 (1966)). This is especially true, when,

as here, "the written agreement contains an integration or merger clause." *Id.*; *see*

Settlement Agreement ¶¶ 5, 7 (merger clause providing that "[n]o promises have been

made by, or to, either Plaintiff or Defendant, except as explicitly stated herein," and that "[t]his is the entire agreement between Plaintiff and the Defendant").

Here, the terms of the signed settlement agreement are unambiguous and unconditional, and the agreement contains a merger clause. *See* Settlement Agreement, ¶¶ 1–7. Thus, the Court may not consider any of the parties' pre-settlement discussions in order to alter the plain terms of the agreement. Accordingly, this objection is **OVERRULED**.[5]

## C.   <u>Post-Settlement Discussions</u>

Plaintiff objects to the determination that the events that followed the execution of the Settlement Agreement did not create a separate contract or obligation between the parties. Obj. R&R at 7; *see* R&R at 22–24. Plaintiff appears to claim that the May 18, 2022 addendum created an "obligation and contract," which was then breached by Defendant. *See* Obj. R&R at 7. Plaintiff is incorrect. As recited above, Plaintiff received two versions of a settlement agreement, one that included additional terms that the parties discussed during the April 29, 2022 telephone call (i.e., the second draft), and one version that did not include those terms (i.e., the first draft). *See* R&R at 4–5; Tr. at 18–19 (Plaintiff testifying that he received both drafts

---

[5] Plaintiff also takes issue with the fact that defense counsel "fil[ed] a joint motion to dismiss not requiring [Plaintiff's] signature." Obj. R&R at 6, ECF No. 54. The Settlement Agreement, however, explicitly states that: "Upon execution of this Agreement, counsel for Defendant, acting on behalf of the Defendant and the *pro se* Plaintiff, shall [file] a Joint Motion to Dismiss with Prejudice in the United States District Court for the Eastern District of Virginia, on behalf of all parties." Though it is unclear, to the extent Plaintiff seeks to object to any portion of the R&R on this basis, such objection is **OVERRULED**.

of the agreement). Plaintiff signed the first draft and refused to sign the second draft. Tr. at 18–19.

After Plaintiff sent the signed Settlement Agreement to defense counsel, he sent a letter dated May 5, 2022, seeking to modify that agreement to include the terms that had been added via the second draft agreement (i.e., the agreement that Plaintiff had rejected in favor of the first draft agreement). *See* Pl.'s May 5, 2022 Letter, ECF No. 32-4. As Magistrate Judge Krask explained:

> This letter constituted an offer. Such an offer, however, was revocable at any time before assent was given and before anything was done in reliance, *J.B. Colt Co. v. Elam*, 120 S.E. 857, 858 (Va. 1924), so long as withdrawal of the offer was communicated to the offeree before acceptance. *See Chang v. First Colonial Sav. Bank*, 410 S.E.2d 928, 930–31 (Va. 1991); *see also Chittum v. Potter*, 219 S.E.2d 859, 864 (Va. 1975) (holding that telephoning a party that a letter containing termination of all negotiations would be arriving was sufficient communication to constitute revocation of an offer).

R&R at 23; *see also Howell v. Kelly Servs., Inc.*, No. 1:12cv821, 2015 WL 2070348, at *3 (E.D. Va. May 1, 2015) (noting that revocation of an offer requires "communication of the revocation before acceptance of the offer").

Here, Plaintiff revoked his offer to modify the Settlement Agreement in his May 11, 2022 letter to defense counsel wherein Plaintiff stated that he wished to "avoid the previous settlement agreement" and that the agreement was "void ab initio." Pl.'s May 11, 2022 Letter at 1. Defense counsel received the May 11, 2022 letter revoking the offer that same day. *See* Sessoms Aff., ECF No. 52-1 at 1–2; May 11, 2022 Email, ECF No. 52-1 at 3–4. Thus, on May 12, 2022, when defense counsel received Plaintiff's May 5, 2022 letter extending the offer to modify the signed Settlement Agreement, there was no longer any pending offer to accept. *See Howell*,

2015 WL 2070348, at *3 ("An offer becomes inoperative if it is not accepted before it has been withdrawn." (quoting *Chittum*, 219 S.E.2d at 864)).

Although there was no longer any pending offer to accept at the time defense counsel received Plaintiff's May 5, 2022 letter, she nevertheless prepared an addendum that would have incorporated into the Settlement Agreement the terms Plaintiff sought to add. *See* Tr. at 65; Addendum, ECF No. 50 at 12–13. Plaintiff, however, refused to sign the addendum. *See* Tr. at 24. Thus, to the extent that the May 18, 2022 addendum was itself on offer from Defendant to modify the Settlement Agreement, Plaintiff rejected that offer when he refused to sign the addendum. Therefore, the signed Settlement Agreement remains the only agreement between the parties, and Plaintiff's objection is **OVERRULED**.

### D.   Denial of Plaintiff's Motion to Void the Settlement Agreement

Plaintiff also objects to Magistrate Judge Krask's recommendation that Plaintiff's request to void the settlement agreement be denied. Obj. R&R at 7. In support of his request to void the settlement, Plaintiff claims that there existed an "off the record deal" where Plaintiff was promised a specific job. *Id.* at 7–8; *see also*, Mot. Void Settlement at 2, ECF No. 34 (Plaintiff claiming that the parties agreed that Plaintiff would be given a specific type of job); Tr. at 24 (Plaintiff claiming that "there were other under-the-table promises that were promised to [him] that [defense counsel] did not add into the Settlement Agreement"). Plaintiff also asserts that defense counsel "was in a hurry to close the matter and asked that the Plaintiff . . . settle informally then [the parties] would go back and amend the settlement 'until

15

[they] got it right.'" R. 59(e) Mot. at 2–3; *see also* Obj. R&R at 2–3 (Plaintiff reiterating these claims); Tr. at 32–33 (same).

Plaintiff further claims that the agreement should be declared void because defense counsel fraudulently induced Plaintiff to sign the agreement by falsely promising Plaintiff that they would amend the agreement later. *See* Obj. R&R at 6 (Plaintiff accusing defense counsel of being untruthful in denying the existence of "off the record settlement terms"); *see also id.* at 7 (Plaintiff again referencing the alleged "off the record deal," and claiming that he was "taken advantage of by counsel"). Plaintiff also accuses defense counsel of "deception" for filing the signed Settlement Agreement without Plaintiff's signature, and alleges that counsel's "actions and inactions constituted extrinsic fraud." *Id.* at 8; *see also id.* (accusing defense counsel of "obscurence [sic] and misrepresentation of the facts").

Magistrate Judge Krask found that Plaintiff's "claims are neither credible nor consistent" with the parties' written agreement. R&R at 25; *see also id.* at 29 (rejecting as "not credible [Plaintiff's] assertion that defense counsel fraudulently induced him to sign the contract[] with false promises to revise in the future as needed" and finding that "[w]ithout a plausible allegation of any kind of fraud that induced him to enter into the settlement contract, [P]laintiff's claim that the contract is void is without merit"). The Court has carefully reviewed the record in this case, including the transcripts of the evidentiary hearing. *See* Tr., ECF No. 56. Upon such review, the Court finds that the record fully supports Magistrate Judge Krask's findings and credibility determinations.

Because the record supports Magistrate Judge Krask's findings and credibility determinations, Plaintiff's aforementioned objections are **OVERRULED**.

### E.   Breach of the Settlement Agreement

In addition to arguing that the Settlement Agreement was void, Plaintiff alternatively claimed that prison officials breached the agreement by providing him with the wrong kind of job and by retaliating against Plaintiff by filing false disciplinary charges against him. *See* R&R at 26 (recounting Plaintiff's claims in this regard). Magistrate Judge Krask determined that Plaintiff was prohibited from seeking to enforce the agreement because it was Plaintiff who "first breached a material term of the agreement" shortly after his transfer to Sussex I. R&R at 28 (noting that "(u)nder Virginia law, a party who first materially breaches a contract cannot enforce that contract" (citing *Horton v. Horton*, 487 S.E.2d 200, 203-04 (Va. 1997))).

Plaintiff objects to Magistrate Judge Krask's determination that Plaintiff first breached the agreement. *See* Obj. R&R at 8. It appears that Plaintiff claims that this finding was "without factual basis." *Id.* Contrary to Plaintiff's assertion, the record fully supports this finding.

The parties agreed that Plaintiff would be transferred from Sussex II to Sussex I and would be given a job. Settlement Agreement ¶ 1, ECF No. 50 at 14. The parties' agreement contains an explicit term stating that "Plaintiff will comply with the rules and regulations of VDOC and Sussex I in order to keep his job and remain at Sussex I." *Id.* Plaintiff was transferred to Sussex I on June 14, 2022. *See* Cabell Aff. ¶ 3, ECF No. 32-1; Tr. at 28 (Plaintiff acknowledging that he was transferred from Sussex II

to Sussex I). Plaintiff was given a job, which he began on June 27, 2022. *See* Cabell Aff ¶ 4; Tr. at 75 (Former Warden Beth Cabell testifying regarding Plaintiff's job and the duties the job entailed); Def.'s Ex 1, ECF No. 50 at 21–27 (prison pay records indicating, among other things, Plaintiff's job title, pay rate, and hours worked from June to December of 2022); *see also* Mot. Void. Settlement at 2 (Plaintiff complaining about the type of job he was given and the number of hours he was to work); Tr. at 29 (Plaintiff acknowledging that he received a job at Sussex I).

On June 26, 2022, shortly after Plaintiff was transferred to Sussex I, he received two disciplinary infractions. *See* Tr. at 77–79 (Warden Cabell testifying about an infraction Plaintiff received on June 26, 2022, for vulgar and insolent language, and an infraction Plaintiff received on August 23, 2022, for possession of tobacco products); *see also* Def.'s Exs. 2&3, ECF No. 50 at 28–49 (prison disciplinary records relating to these incidents). Plaintiff subsequently received several more infractions, which ultimately resulted in Plaintiff being transferred to Wallens Ridge State Prison. *See* Tr. at 80–89 (Warden Cabell's testimony regarding Plaintiff's other disciplinary infractions and transfer); Def.'s Exs. 4–8 (prison disciplinary records relating to the additional offenses); Def.'s Ex. 9 (record from the prison housing authority approving Plaintiff's transfer based upon guilty findings for eight disciplinary charges in the preceding six months).

Under the plain language of the parties' agreement, Plaintiff was obligated to remain of good behavior in order to keep his job and to remain at Sussex I, and Plaintiff failed to do so. Although Plaintiff claimed that the disciplinary infractions

were "false and specious," Magistrate Judge Krask rejected those contentions.[6] *See* R&R at 27–28 (noting that the "evidence weighs heavily against" Plaintiff on this point, and that Plaintiff's filings and testimony failed to support his allegations of false or retaliatory disciplinary charges).

The Court has carefully reviewed the record, including the transcripts of the evidentiary hearing and the records of Plaintiff's disciplinary charges. *See* Tr. at 77–87 (Warden Cabell's testimony regarding Plaintiff's disciplinary infractions); *id.* at 69–71 (Plaintiff claiming that the charges were "bogus"); Def.'s Exs. 2–9, ECF No. 50 at 28–89. Upon such review, the Court finds that the record fully supports Magistrate Judge Krask's findings and credibility determinations. Accordingly, Plaintiff's objection to Magistrate Judge Krask's determination that Plaintiff first breached the agreement is **OVERRULED**.[7]

---

[6] Though it is unclear, Plaintiff appears to also raise an objection to Magistrate Judge Krask's decision overruling Plaintiff's objection to the admissibility of certain disciplinary records at the evidentiary hearing. *See* Obj. R&R at 5 (Plaintiff stating that he "objected to the disciplinary exhibits as irrelevant"); Tr. at 84 (Plaintiff stating that "there is an objection to all of these disciplinary actions on the grounds of relevance"). "A Magistrate Judge's evidentiary ruling is reviewed for an abuse of discretion." *Virgin Enterprises Ltd. v. Virgin Cuts, Inc.*, 149 F. Supp. 2d 220, 226 (E.D. Va. 2000) (citing *Benedi v. McNeil–P.P.C, Inc.*, 66 F.3d 1378, 1383 (4th Cir.1995)). Here, the disciplinary records, which cover only the time period that Plaintiff was at Sussex I, were clearly relevant to determining whether or not Plaintiff breached the Settlement Agreement by failing to remain of good behavior. Thus, Magistrate Judge Krask's decision to allow the records in evidence was not an abuse of discretion, and Plaintiff's objection is **OVERRULED**.

[7] The Court notes that in his objections to the R&R, Plaintiff claims that he was not permitted or was unable to introduce certain evidence at the March 27, 2024 evidentiary hearing due to "lack of adequate notice." Obj. R&R at 5; *see id.* at 9. From what the Court can gather, it appears that Plaintiff wanted to summon a witness and to present emails that support his claims that he was promised a specific job. *See* Obj. R&R at 5, 9. Plaintiff, however, does not clearly explain how such evidence would

## V. <u>Conclusion</u>

For the reasons set forth above, the Court **OVERRULES** Plaintiff's objections to the R&R; **ACCEPTS** Magistrate Judge Krask's findings of fact and conclusions of law; and **ADOPTS** the recommendations set forth therein, with the exception that the Court will retain jurisdiction over this matter for the sole purpose of enforcing the terms of the Settlement Agreement, if necessary.

Accordingly, Plaintiff's Rule 59(e) Motion, ECF No. 31, is **GRANTED**; and the Court's June 23, 2022 Dismissal Order and Judgment are **VACATED**. Further, having found that the parties entered into an enforceable agreement to settle this matter, Defendant's reinstated Motion to Dismiss, ECF No. 27, is **GRANTED**; and Plaintiff's Motion to Void Settlement, ECF No. 34, is **DENIED**. This matter is **DISMISSED**; however, the Court retains jurisdiction for the sole purpose of enforcing the terms of the Settlement Agreement, if necessary.[8]

---

have supported his arguments at the hearing. *See id.* To the extent that Plaintiff intends to raise an objection to any of Magistrate Judge Krask's proposed findings and recommendations on this basis, the Court finds that any such objection lacks the requisite specificity to warrant *de novo* review. *See Reid v. North Carolina*, 837 F. Supp. 2d 554, 557 (W.D.N.C. 2011) (explaining that "*de novo* review is not required . . . 'when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations'" (quoting *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982))), *aff'd*, 471 F. App'x 188 (4th Cir. 2012). Accordingly, any intended objection regarding Plaintiff's claimed inability to present evidence is **OVERRULED**.

[8] The Court notes that the Settlement Agreement contemplates the dismissal of several other specifically listed actions—*Kinard v. Vandermark*, No. 2:22cv143; *Kinard v. Mitchen*, No. 2:22cv55; and *Kinard v. Critton*, 2:20cv125—as well as any other claims relating to events on May 7, 2021, *see Kinard v. Leary-Williams*, No. 2:22cv187. Settlement Agreement at 1, ECF No. 50 at 14–15.

Plaintiff may appeal from this Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The written notice must be received by the Clerk within thirty days of the date of entry of this Dismissal Order. If Plaintiff wishes to proceed *in forma pauperis* on appeal, the application to proceed *in forma pauperis* shall be submitted to the Clerk of the United States Court of Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **DIRECTED** to please send a copy of this Final Order to Plaintiff Jordan Joseph Kinard and to counsel for Defendant.

**IT IS SO ORDERED**.

/s/
_____
Arenda L. Wright Allen
United States District Judge

Norfolk, Virginia
January 27, 2025